IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| A.T. MASSEY COAL COMPANY, INC., <br><br> Plaintiff. <br><br> v. <br><br> RUDIMEX GmbH, et al., <br><br> Defendants. | Civil Action Number 3:05CV190-JRS |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on the Motion to Dismiss filed by Defendants Rudimex GmbH ("Rudimex") and Reinhard Jeschonek on September 15, 2005. For the reasons discussed herein, the Motion to Dismiss is GRANTED in part, and DENIED in part.

**I.**

In March 2004, Rudimex contacted Plaintiff A.T. Massey Coal Company, Inc. ("A.T. Massey") about the possibility of purchasing coal which Rudimex intended to resell to an Indian customer, MMTC. Later that month, several Rudimex representatives, including co-defendant Mr. Jeschonek, met with an A.T. Massey representative, Mike Allen, in Richmond, Virginia, to discuss a possible sales contract. The parties met again in late April 2004 to further discuss the terms of a written contract between A.T. Massey and Rudimex. Over the course of a two-day meeting, two contracts were written, but not signed, which detailed the terms of a deal for the purchase of eight shipments of coal (the "Massey Contracts"). The Massey Contracts contained, among others, provisions outlining quantity figures, quality specifications, and shipment time frames.

Over the course of contract negotiations, Rudimex represented to A.T. Massey that it had an agreement with MMTC pursuant to which MMTC would purchase the coal that Rudimex was to obtain from A.T. Massey. Rudimex further represented to A.T. Massey that MMTC would accept coal meeting the specifications provided in the Massey Contracts. In early May 2004, A.T. Massey learned that MMTC was, in fact, unwilling to accept coal complying with the specifications listed in the Massey Contracts. On May 21, 2004, Mr. Allen met with Mr. Jeschonek and another Rudimex representative to discuss an amendment to the Massey Contracts that would help Rudimex maintain its contract with MMTC. At the end of the meeting, Mr. Allen and Mr. Jeschonek signed a letter agreement describing a change in how the parties would proceed with respect to rejection specifications.

The first shipment of coal was delivered and paid for in mid-June 2004. Soon thereafter, Mr. Allen e-mailed four Rudimex representatives, including Mr. Jeschonek, to communicate A.T. Massey's understanding that the seven remaining shipments would be for a lower quality coal than what was provided in the first shipment. Nobody from Rudimex disputed or rejected A.T. Massey's asserted belief that it had entered into binding contracts with Rudimex.

A.T. Massey then began to prepare for its second shipment of coal to be delivered in mid-July 2004. On July 7, 2004, Peter Gunn, an agent of Rudimex, e-mailed Mr. Allen to confirm that Mr. Jeschonek was able to convince MMTC to accept coal from A.T. Massey consistent with the provisions of the Massey Contracts. Mr. Jeschonek also received this e-mail but did not respond to correct any misstatements.

On July 13, 2004, A.T. Massey delivered the second shipment of coal to the port where it had arranged to meet Rudimex. Rudimex had commissioned a vessel to arrive that same day which was

to be loaded the next day.  Rudimex rejected the second shipment, however, and did not provide A.T. Massey with any letter of credit or other form of payment.  A.T. Massey paid to store the coal for several weeks in Norfolk and then resold it to another customer at a loss of approximately $600,000.00.

After Rudimex failed to accept or pay for the second shipment, Mr. Allen faxed a letter to Mr. Jeschonek on August 13, 2004, demanding "adequate assurances of [Rudimex's] ability to perform [its] obligations under the agreement no later than August 20, 2004."  Compl. ¶ 24.  On August 16, 2004, Mr. Jeschonek replied to Mr. Allen's e-mail and responded, in part, that Rudimex could "probably not meet [A.T. Massey's] deadline of August 20th to provide [A.T. Massey] with adequate assurances to perform [Rudimex's] obligations under the agreement." Id. ¶ 25.  Rudimex did not provide A.T. Massey with the requested assurances, and A.T. Massey sold the remaining coal it had intended to ship to Rudimex at a loss.

On March 16, 2005, A.T. Massey filed its four-count Complaint seeking damages for the following causes of action:

**Count One**:   Breach of Contract

**Count Two**:   Actual Fraud

**Count Three**: Constructive Fraud

**Count Four**:  Negligent Misrepresentation

On September 15, 2005, Defendants Rudimex and Mr. Jeschonek filed the instant Motion to Dismiss the Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Mr. Jeschonek moves to dismiss under Rule 12(b)(2), as well, for lack of personal jurisdiction over him as an individual.

II.

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff will not be able to prove any set of facts that would entitle the plaintiff to relief. See Conley v. Gibson, 355 U.S. 41, 45–46 (1957). In analyzing a Rule 12(b)(6) motion for failure to state a claim, a court must "accept as true the factual allegations of the challenged complaint" and "view those allegations in the light most favorable to the plaintiff." Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). In shaping its ruling, a court can rely upon only the allegations set forth in the complaint, as well as any documents attached as exhibits or incorporated by reference. Fundamentally, to be sufficient, a complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests" so as to create a factual basis sufficient to enable the defendant to prepare a response. See Conley, 355 U.S. at 47.

As with a Rule 12(b)(6), when a defendant moves to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), a court must "take all disputed facts and reasonable inferences in favor of the plaintiff." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). With a Rule 12(b)(2) motion, however, the burden is ultimately on the plaintiff "to prove the grounds for jurisdiction by a preponderance of the evidence." Id. at 59–60.

III.

A. Count One: Breach of Contract

1. Failure to State a Claim

As the primary grounds for defeating A.T. Massey's breach of contract claim for failure to state a claim, Defendants deny the existence of a contract for the second shipment of coal. Defendants assert that the Uniform Commercial Code's statute of frauds invalidates the unsigned "contracts" and that,

4

even if the U.C.C. is not applicable, the alleged modification letter was not supported by consideration and, therefore, should not be enforced.

A.T. Massey responds by pointing to the two negotiated—albeit unsigned—Massey Contracts for the sale of coal, to be carried out over the course of eight shipments. A.T. Massey notes that both parties fully performed their obligations concerning the first shipment of coal. With regard to the alleged modification, A.T. Massey argues that this letter-agreement signed by both parties was supported by consideration in that A.T. Massey agreed to provide a higher grade of coal than it had originally agreed to supply. Furthermore, A.T. Massey contends that the modification changed only the rejection specifications applicable to the first shipment of coal and did not in any way change the parties' contractual obligations relating to the final seven shipments. Most fundamentally, A.T. Massey argues that, despite any lack of formalities surrounding the formation of the Massey Contracts, the parties' conduct demonstrates their mutual understanding that they were contractually bound.

The facts underlying the parties' relationship and any agreement(s) into which they might have entered are rather complicated. The parties to this international business transaction have raised many points of contention, including, *inter alia*: the validity and enforceability of the Massey Contracts; the terms of those alleged contracts; the scope and meaning of a choice of law provision; and the implications of certain statements made in letters, e-mails, and/or phone calls between the parties.

As a preliminary matter, the Court must address the choice of law issue. Section 19 of each of the Massey Contracts contains the following provision: "This Agreement shall be governed by the internal laws of the State of New York without reference to its conflict of laws, rules or statutes." Massey Contracts § 19. For all intents and purposes, however, the effect of applying New York law when analyzing A.T. Massey's breach of contract claim at this stage of the proceedings would not stray far from the result that would be reached under Virginia law—both states have adopted the relevant

provisions of the Uniform Commercial Code (the "U.C.C."). See <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 n.1 (2d Cir. 2003) (noting that New York adopted the U.C.C., codified as the New York Uniform Commercial Code, in 1964); <u>United States ex rel. Whitaker's Inc. of Sumter v. C.B.C. Enters.</u>, 820 F. Supp. 242, 246 (E.D. Va. 1993) (noting that the U.C.C. has been adopted in Virginia as Title 8.2 of the Code of Virginia).

The most helpful U.C.C. provision for purposes of analyzing this Rule 12(b)(6) Motion states that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." N.Y. U.C.C. § 2-204(1); Va. Code Ann. § 8.2-204(1). The parties' conduct in this case is quite telling. A.T. Massey delivered the first shipment of coal, and Rudimex accepted and provided payment without incident. The parties were clearly proceeding under the premise of being contractually bound, at least with respect to the first shipment.

There is considerable uncertainty surrounding the events occurring between the first and second shipments and the alleged "modification" of the Massey Contracts. In construing the facts as pleaded in the light most favorable to the plaintiff, however, it appears at least possible that A.T. Massey and Defendants were conducting themselves in a manner which recognized the existence of a contract. After all, on August 16, 2004, one month after Rudimex rejected A.T. Massey's second shipment of coal, Mr. Jeschonek replied to Mr. Allen's e-mail and stated, in part, that Rudimex could "probably not meet [A.T. Massey's] deadline of August 20th to provide [A.T. Massey] with adequate assurances to perform [Rudimex's] obligations under *the agreement*." Id. ¶ 25 (empahsis added). Defendants suggest that Mr. Jeschonek was "merely parroting verbatim" Mr. Allen's language. Defs.' Reply 5. This explanation will not suffice at this point in the proceedings. It could at least be reasonably argued that Defendants implicitly acknowledged the existence of a contract one month after Rudimex rejected

6

the second shipment.  Unable to conclude that A.T. Massey will not be able to prove any set of facts that would warrant relief, the Court cannot grant Defendants' Motion as to Count One on the basis of Rule 12(b)(6).  See Conley v. Gibson, 355 U.S. 41, 45–46 (1957).

**2.   Lack of Personal Jurisdiction**

In addition to the Rule 12(b)(6) arguments, Mr. Jeschonek argues under Rule 12(b)(2) that Count One fails as to him, because he was not a party to any alleged contract and has not been properly brought within this Court's jurisdiction.  A.T. Massey responds by explaining to the Court that "[Defendants] do not attempt to show that a properly registered [German] 'GmbH' immunizes its owners, shareholders or members from liability if the GmbH proves insolvent."  Pl.'s Mem. Opp'n 17.  A.T. Massey then argues that, "[u]ntil Defendants provide that legal authority to this Court, Jeschonek's dismissal is premature."  Id.  In fact, Defendants do not bear any burden of providing evidence showing the impropriety of this Court's jurisdiction as exercised over Mr. Jeschonek personally.  To the contrary, the plaintiff bears the burden of establishing the grounds for jurisdiction by a preponderance of the evidence.  Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).

In considering whether or not Mr. Jeschonek has been properly brought within this Court's jurisdiction, the Court must be mindful of the "fiduciary shield doctrine."  This doctrine provides that "'the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity.'"  Pittsburgh Terminal Corp. v. Mid Allegheny Corp., 831 F.2d 522, 525 (4th Cir. 1987) (quoting Bulova Watch Co. v. K. Hattori & Co., 508 F. Supp. 1322, 1347 (E.D.N.Y. 1981)).  Although some exceptions to this doctrine exist, A.T. Massey has not provided the Court with arguments or relevant authority on this point so as to overcome its burden of establishing the grounds for jurisdiction over Mr. Jeschonek by a preponderance of the evidence.  As such, Count One must be dismissed as to Mr. Jeschonek.

### B.   Counts Two and Three: Actual Fraud and Constructive Fraud

A.T. Massey also seeks damages for what they characterize as Defendants' fraudulent misrepresentations or omissions regarding material facts, which ultimately induced A.T. Massey to perform by delivering the second shipment of coal.  Defendants contend that these fraud claims are barred by Virginia's "economic loss rule."

It is clear to the Court that A.T. Massey's claims for actual and constructive fraud cannot coexist with its breach of contract claim.  Virginia courts[1] are quick to "safeguard against turning every breach of contract into an actionable claim for fraud."  Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 507 S.E.2d 344, 348 (Va. 1998).  Where allegations of fraud are considerably intertwined with allegations of breach of contract, a court must take a close look at the nature of the damages being sought for each claim.  Fraud claims should be dismissed when a plaintiff fails to sufficiently allege damages flowing from fraudulent conduct.  See Secureinfo Corp. v. Telos Corp., 387 F. Supp. 2d 593, 615–16 (E.D. Va. 2005).  In general, a fraud claim is not actionable "'where the position of the complaining party is no worse than it would have been had the alleged fraud not been committed.'" Cmty. Bank v. Wright, 267 S.E.2d 158, 160 (Va. 1980) (quoting Cooper v. Wesco Builders, Inc., 281 P.2d 669, 672–73 (Idaho 1955)). This principle is typically enforced when the damages alleged in support of a claim for fraud, in essence, share the same root as the damages alleged in support of a claim for breach of contract.

---

[1] The Court will apply Virginia law to analyze the fraud claims.  The choice of law provision in the Massey Contracts provides only that the "[a]greement shall be governed" by New York law.  Allegations of fraud, by their very nature, relate to conduct outside of the agreement and, as such, must be governed by the place of alleged injury—in this case, Virginia.  See Diaz Vicente v. Obenauer, 736 F. Supp. 679, 690 (E.D. Va. 1990).

Applicable in this case, Virginia's economic loss rule is grounded in the logic that "losses suffered as a result of breaches of duties assumed only by agreement" amount to "damages . . . within the contemplation of the parties when framing their agreement."  See Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 374 S.E.2d 55, 58 (Va. 1988).  Such damages "remain[] the particular province of the law of contracts."  Id.  In Sensenbrenner, the Supreme Court of Virginia explained the economic loss rule to mean that "[r]ecovery in tort is available only when there is a breach of a duty to 'take care for the *safety* of the person or property of another,'" as opposed to purely economic losses for which contract damages could make a plaintiff whole.  Id. (quoting Blake Constr. Co. v. Alley, 353 S.E.2d 724, 726 (Va. 1987)) (emphasis added in Sensenbrenner).  The rule, therefore, "prevent[s] a plaintiff from pasting an ill-suited tort label on a set of facts that supports nothing more than a breach of contract claim."  City of Richmond v. Madison Mgmt. Group, 918 F.2d 438, 446 (4th Cir. 1990).

A.T. Massey does allege that Defendants made false representations concerning their ability to persuade MMTC to accept the coal specified in the Massey Contracts.  The Court makes no ruling as to the merit of these allegations but does find that the damages resulting from this alleged fraud simply cannot be isolated from the damages sought under Count One's breach of contract claim.  As discussed earlier, a court must dismiss fraud-based claims if the plaintiff has not properly alleged damages flowing from fraudulent conduct, independent of damages for breach of contract.  Secureinfo Corp. v. Telos Corp., 387 F. Supp. 2d 593, 607, 615–16 (E.D. Va. 2005).  A.T. Massey's basic and overarching grievance in this litigation is that Rudimex wrongfully rejected the second shipment and wrongfully repudiated the final six shipments of coal.  Because A.T. Massey could be made whole through damages for breach of contract, the Court must dismiss Counts Two and Three under Virginia law.

C.  **Count Four: Negligent Misrepresentation**

A.T. Massey's claim for negligent misrepresentation can be dismissed without lengthy inquiry for the same reasons set forth in the discussion of Counts Two and Three. Furthermore, it is well-established that "Virginia does not recognize any tort of negligent misrepresentation." Bentley v. Legent Corp., 849 F. Supp. 429, 434 (E.D. Va. 1994).[2]

**IV.**

For the reasons stated, with respect to Count One, Defendant's Motion to Dismiss is hereby DENIED as to Rudimex, but GRANTED as to Mr. Jeschonek. With respect to Counts Two, Three, and Four, the Motion to Dismiss is hereby GRANTED as to all Defendants.

An appropriate Order shall issue.


ENTERED this  9th  day of January, 2006

                                    /s/
                        James R. Spencer
                        UNITED STATES DISTRICT JUDGE

---

[2] It is also worthwhile to note that Count Four, as pleaded, would fail even under New York law. Although negligent misrepresentation is recognized as a valid cause of action in New York, it requires the added finding that "the 'parties' relationship suggests a *closer degree of trust and reliance than that of the ordinary buyer and seller*." Simms v. Biondo, 816 F. Supp. 814, 823 (E.D.N.Y. 1993) (quoting Am. Protein Corp. v. AB Volvo, 844 F.2d 56, 63 (2d Cir. 1988)) (emphasis added). Nothing in the record suggests that the parties' relationship is of this nature.